## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**GWEN FAULKENBERRY,**
**SPECIAL RENE SANDERS,**
**ANIKA WHITFIELD, AND**
**KIMBERLY CRUTCHFIELD**                                    **PLAINTIFFS**

**v.**                               **Case No. 4:25-CV-592-DPM**

**ARKANSAS DEPARTMENT OF EDUCATION, ET AL.**          **DEFENDANTS**

### LRSD'S COMPLAINT IN INTERVENTION

### INTRODUCTION

1.      This is an action for declaratory and injunctive relief brought by the Little Rock School District (LRSD) pursuant to 28 U.S.C.§§ 1331 (Federal Question) and 1367 (Supplemental Jurisdiction), challenging sections of Act 237 of the 2023 Arkansas General Assembly (codified as Arkansas Code Annotated §6-18-2501 *et seq.*) commonly referred to as "the LEARNS Act," on the grounds that sections of the LEARNS Act violate (i) the Establishment Clause of the First Amendment to the United States Constitution; (ii) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, (iii) Article 2, Section 24 of the Arkansas Constitution, and (iv) Article 14 of the Arkansas Constitution.

2.      Section 42 of the LEARNS Act, codified as Ark. Code Ann. §6-18-2501 *et seq.*, creates the "Arkansas Children's Educational Freedom Account Program" ("Voucher Program"). (Ark. Code Ann. §6-18-2502)

3.      Pursuant to the Voucher Program, funds derived from public taxes are assessed and collected under the laws of Arkansas and are appropriated by the General Assembly to the Voucher Program. (Ark. Code Ann. §6-18-2505) Defendant Arkansas Department of Education ("ADE"),

EXHIBIT
A

is authorized by the LEARNS Act to use monies in the Voucher Program to purchase tuition, uniforms, and other goods and services from private schools and other persons or entities identified as "participating service providers" for students who are eligible to enroll in a public elementary or secondary school but who, or whose parent or guardian, choose to enroll such student in private schools, home schooling, or other mode of instruction. Ark. Code Ann.§ 6-18-2505, *et seq.*

4.      In its implementation of the LEARNS Act Voucher Program, the ADE has approved a roster of private schools in the State of Arkansas (and one in Tennessee) from which students, or their parents, may choose to apply for admission. If the student is accepted by the school, funds are transferred by the ADE from Arkansas Children's Educational Freedom Account Program to an account for the student established by the ADE for the ADE's use in directly paying to the school or participating service provider, the child's tuition, uniforms, supplies and other materials and services.

5.      The current list of ADE-approved private schools consists of approximately of 128 schools. Approximately 101 of those schools, or 80% percent of the total number of schools on the list, are sectarian; *i.e.,* associated with a religious organization, denomination, or religion that, in addition to teaching academic subjects, incorporate into such teaching the beliefs, creeds and doctrines that such organization, denomination or religion advocates and with which it is associated, and present the academic subjects taught through the lens of its particular faith or beliefs.

6.      The Voucher Program as applied violates the Establishment Clause of the First Amendment to the United States Constitution in that it aids in the establishment of religions by providing direct funding from the State of Arkansas to private schools that are owned and operated by religious establishments, denominations or organizations ("sectarian schools"), whose curricula

include and incorporate the teaching, encouragement and perpetuation of beliefs and doctrine of particular religions or denominations or divisions thereof.

      7.    The Voucher Program also violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that:

      (i)    While the Voucher Program provides funds for payment of a portion of private school tuitions, uniforms, supplies and other educational necessities ("private school costs"), it does not pay for such private school costs in excess of 90 percent of the amount of the State's prior year statewide public school "foundation funding" ("the foundation payment") allotted per student under Ark. Code Ann. §6-20-2305, a figure that is currently $6,864.00. The LEARNS Act thus discriminates against children of low-income families who are unable to pay the private school costs, in excess of such foundation payment, and in favor of wealthy families who can afford to pay such excess amount.

      (ii)    The LEARNS Act facially purports to provide funding, in part, for the education of all Arkansas school children who elect to enroll in private schools. However, as applied, the Voucher Program is not readily or reasonably available to children who reside in approximately one-third (1/3rd) of Arkansas counties in which no private school is located.

      (iii)    Unlike public schools, such as LRSD, the private schools may establish qualifications or criteria for admission to their schools that discriminate against children on account of their individual characteristics or circumstances, including physical or mental disability or handicap. Thus, the Voucher Program discriminates

against children with such disabilities, handicaps, or other circumstances that are not acceptable to all private schools.

8.     The Voucher Program violates the provisions of Article 2, Section 24 of the Arkansas Constitution in that the Voucher Program requires taxpayers of Arkansas to contribute to and maintain, against the consent of many such taxpayers, private schools that are owned and operated by religious establishments, denominations or organizations whose curricula include and incorporate the teaching of beliefs and doctrine of particular religions or denominations or divisions thereof, and provides a preference to religious establishments, denominations or modes of worship.

9.     The Voucher Program violates Article 14 § 1 of the Arkansas Constitution which requires that "The State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education." The Voucher Program violates this provision by establishing and funding a separate system of free or nearly free private schools which diverts resources from public schools and diminishes the State's capacity to "maintain a general, suitable and efficient system of free public schools."

10.     The Voucher Program violates Article 14 § 2 of the Arkansas Constitution, which requires that "[no] money or property belonging to the public school fund, or to this State, for the benefit of schools or universities, shall ever be used for any other than the respective purposes to which it belongs." The Voucher Program violates this provision by diverting money from the public schools of this state to a newly established system of publicly funded private schools.

11.     LRSD seeks (i) a declaratory judgment that the Voucher Program violates the Establishment Clause of the First Amendment to the U.S. Constitution, and the Equal Protection

Clause of the Fourteenth Amendment to the U.S. Constitution; (ii) a declaratory judgment that the

Voucher Program violates Article 2, Section 24 of the Arkansas Constitution; (iii) a declaratory

judgment that the LEARNS Act violates Article 4, §§ 1 and 2 of the Arkansas Constitution; and

(iv) an injunction to be issued to each of the Defendants prohibiting them from further

implementation of the LEARNS Act Voucher Program.

## PARTIES

12.     The original Plaintiffs, Gwen Faulkenberry, Special Renee Sanders, Kimberly

Crutchfield, and Anika Whitfield are described in their original Complaint ("Faulkenberry

Complaint").

13.     Plaintiff intervenor LRSD is a public school district established under Arkansas law

pursuant to Article 14 of the Arkansas Constitution. LRSD is authorized by statute to sue and be

sued in its own name. Ark. Code Ann. § 6-13-102.

14.     The Defendant Arkansas Department of Education (ADE), is an administrative

agency of the State of Arkansas, with its principal office in Pulaski County. The ADE administers

programs affecting the public schools of Arkansas, and is charged under the LEARNS Act with

implementing the LEARNS Act, including the development and implementation of regulations

and procedures relating to the Voucher Program which makes public funds available to private

schools in violation of the United States Constitution and the Arkansas Constitution, and which

constitutes an illegal and *ultra-vires* act of the ADE.

15.     Defendant Jacob Oliva is Secretary of the ADE, who is responsible for and is

currently engaged in implementing, overseeing and ensuring that the duties and programs of the

ADE are performed, including the implementation of the LEARNS Act and regulations

implementing the Act. Secretary Oliva is sued herein in his official capacity as Secretary of the

Arkansas Department of Education.

16.     The nine-member Arkansas State Board of Education (ASBE) is the policy-making body for public elementary and secondary education in Arkansas. Its members are responsible under Arkansas Code Ann. §6-18-2504 for developing, adopting, approving and enforcing regulations, rules, policies and procedures of the ADE, including those required by the LEARNS Act to be adopted in implementing the Act. The members of the State Board are joined as Defendants in their official capacities.

17.     The Defendant Hon. Sarah H. Sanders is the duly elected Governor of the State of Arkansas and, as such, she promoted, proposed, endorsed, approved and signed into law the LEARNS Act. Since its adoption, she has implemented the LEARNS Act through Executive Orders and otherwise, and bears the ultimate responsibility for its development, execution and enforcement. Governor Sanders is sued in her official capacity as Governor of the State of Arkansas.

18.     The Arkansas Department of Finance and Administration (ADFA) is an administrative agency of the State of Arkansas, with its principal address and office in Pulaski County. The ADFA is charged under the LEARNS Act with implementing portions of the LEARNS Act, including the development of regulations and procedures relating to the Voucher Program established under the LEARNS Act, and the distribution of funds to recipients of the Voucher Program.

19.     Jim Hudson is the Secretary of the ADFA and is responsible for overseeing and ensuring that the duties of the ADFA are performed. Secretary Hudson is sued in his official capacity as Secretary of the ADFA.

20.    The acts and omissions of all the Defendants alleged herein relative to the implementation of the Voucher Program of the LEARNS Act are in violation of the First and Fourteenth Amendments to the United States Constitution, Article 2, Section 24 of the Arkansas Constitution, and Article 14 of the Arkansas Constitution, and as such, are *ultra vires.* Defendants, as officers, employees and agents of the State of Arkansas are not entitled to the defense of sovereign immunity for liability arising out of *ultra vires* acts.

21.    The Defendants named herein are named only in their official capacities as the State Officials responsible for the implementation, oversight and enforcement of the LEARNS Act.

## JURISDICTION AND VENUE

22.    This Court has jurisdiction of this case pursuant to 28 U.S.C. §1331, which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This Court has supplemental jurisdiction of the state law claims pursuant to 28 U.SC. § 1367.

23.    LRSD seeks declaratory and injunctive relief declaring the Voucher Program of the LEARNS Act, Ark. Code Ann. §6-18-2501 *et seq.,* unconstitutional and enjoining the State from further implementing the Voucher Program. This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

24.    Venue is proper under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims described herein occurred in this District, LRSD is located in this District, and the Defendant State agencies, board and officials are officially located in this judicial district.

## FACTS

### *The LEARNS Act*

25.    The LEARNS Act represents a radical and unconstitutional departure from a public school system that has endured since the establishment of the State of Arkansas. If it continues to be implemented, the LEARNS Act will drain valuable and necessary resources from the public school system and create a separate and unequal dual school system that discriminates between children based on economic, racial and physical characteristics and capabilities.

26.    The LEARNS Act, through the use of public funds of the State of Arkansas, is creating a separate and unequal dual school system of public and private schools, the latter of which, as a regular part of their curricula, teach the doctrines of particular religions, creeds and sects as a means of the establishment, encouragement, development and perpetuation of such religions, creeds and sects.

27.    The LEARNS Act is also, through the use of public funds of the State of Arkansas, creating a separate and unequal dual school system that denies the equal protection of the laws available and applicable to Arkansas school children based on economic, racial and physical characteristics and capabilities.

28.    The LEARNS Act is also, through the use of public funds of the State of Arkansas generated through public taxes, creating a system of private schools that are not available to all school children in Arkansas because such private schools are not located in and accessible to school children in many rural areas of the State of Arkansas.

29.    Section 42 of the LEARNS ACT, Ark. Code Ann. 6-18-2501 *et. seq.,* establishes a "Arkansas Children's Educational Freedom Account Program" (also known as the "Voucher Program") LEARNS Act, Ark. Code Ann. § 6-18-2502.

8

30.    Under the Voucher Program, public school funds derived from public taxes may be transferred from state funds assessed and collected for the use and benefit of the public schools into accounts denominated as "Freedom Accounts." *Id.,* Ark. Code Ann. §6-18-2505(a)(l).

31.    Such accounts may be established by the State of Arkansas for or on behalf of an individual "eligible student" *(i.e.,* a resident of the State of Arkansas who is eligible to enroll in a public elementary or secondary school), and may be and are used by the State to purchase tuition, uniforms, supplies and other goods and services for such "eligible student" directly from private schools, or from other "participating service providers," or for home schooling. Ark. Code Ann. §6-18-2503(4), (11); Ark. Code Ann. §6-18-2505(g).

32.    The LEARNS Act provides that the amount of state funds that may be transferred by the State into the "Freedom Account" of a student may be up to ninety percent (90%) of the States' prior-year per-student foundation funding amount. Ark. Code Ann. §6-18-2505(a)(l).

33.    Arkansas has a student-based funding model for its allocation of state funds for public education. Student-based formulas focus policymakers on students' needs and whether resources are being allocated in a way to meet differing levels of need. Student-based funding formulas provide a base amount of funding for each student. Under Arkansas student-based funding formulas, school districts such as LRSD receive a base or "foundation" amount for each student. For the 2024-25 school year, districts in Arkansas receive foundation funding of $7,771 per student. (Source: Arkansas House of Representatives News Release October 11, 2024 ).

34.    The amount of money equal to ninety percent (90%) of the prior year's statewide "foundation funding" allotted per student under Ark. Code Ann. §6-20-2305, is approximately $6,864.00 for the year 2025-2026.

35.    Under the LEARNS Act Voucher Program, money allocated by the ADE into a

9

student's Freedom Account may thereafter be used by the ADE to directly pay to "Participating Schools" *(i.e.,* "a private elementary or private secondary school"), or to a "Participating Service Provider" *(i.e.,* a "person or entity, including a participating public or private school that receives payments from program accounts to provide goods and services that are covered as qualifying expenses ....") chosen by the student or the parent or guardian of the student. Ark. Code Ann. §6-18-2505(b)(l). The ADE has developed a list of Participating Service Providers which is attached to the Faulkenberry Complaint as **Exhibit No. 4.**

36.     Such payments are made by the ADE from the Participating Student's account directly to the participating private schools, home school, or participating service providers in four (4) equal quarterly installments. Ark. Code Ann. §6-18-2505(b)(1). *See also*, **Ex. 1 to the Faulkenberry Complaint, "Arkansas EFA Quick-Fact Guide for Families,"** p. 3 ("Payments will be sent directly to participating schools and service providers through Class Wallet, a digital wallet and accounts payable platform.")

37.     For the school year 2024-2025 (the second year of the Voucher Program's existence), the Arkansas Revenue Stabilization Act adopted by the Arkansas General Assembly allocated $97,487,318.00 for the Voucher Program, a 300% increase over the previous (initial) school year allocation. For the school year 2025-2026, the Revenue Stabilization Act allocates $187,487,318 for the Voucher Program, a 100% increase over the previous school year allowance. *See*, **Exhibit 5 to the Faulkenberry Complaint, 2025-2026 Revenue Stabilization Act, Act 888 of 2025.**

38.     At least twenty-four of Arkansas' 75 counties (almost one-third), have no private schools. **Exhibit 3 to the Faulkenberry Complaint - ADE List of Private Schools in Arkansas**. Seventy two percent (72%) of private schools in Arkansas are in urban or suburban areas. Pulaski

County has the most private schools with 35, followed by Benton County with 13 and Washington

County with 11. **Exhibit 6** to the Faulkenberry Complaint shows the distribution of private schools

in the State of Arkansas. (Source: Ark. Dept. of Education)

39.     The Arkansas Education Freedom Accounts Quick-Fact Guide for Families,

published by the Arkansas Department of Education, states:

> Signed into law as part of Governor Sanders' LEARNS education legislation,
> Education Freedom Accounts may be used by eligible families to cover private
> school tuition, fees, uniforms, and some other required expenses. Education
> Freedom Accounts provide funding up to 90% of the States' prior year per-student
> foundation funding amount.

40.     The LEARNS Act does not provide an alternative source to public school monies

for financing the vouchers. However, the legislature and governor seek to do that with a

nomenclature change in the annual act distributing general revenues, the Revenue Stabilization

Acts of 2023 and 2024.

41.     Neither Section 42 of the LEARNS Act, which comprises the full text of the

Freedom Accounts program, nor any other portion of the Act specifies the source of funds that are

to be paid for the education of children at private schools or to other providers of normal school

services, including parents. Since the entire Section is included in the functions of the state

Department of Education and the State Board of Education, the presumption must be that those

costs will be borne through appropriations for the agency and its board.

42.     Section 42 of the LEARNS Act specifies that the Freedom Accounts program and

all the particulars identified in the Act will be administered by the ADE and the ASBE, which

itself is manifestly a violation of Section 2 of the Education article since public school funds will

pay the costs of administering the private-school funding program.

11

43.     Money allocated into a student's Freedom Account may thereafter be used by the Defendant, Arkansas Department of Education (ADE), on behalf of the participating student and/or the student's parent(s) or guardian to directly pay to the "Participating Schools" *(i.e.,* "a private elementary or private secondary school") **(Ex. 1, p. 83, line 25),** or to a "Participating Service Provider" *(i.e.,* a "person or entity, including a participating public or private school that receives payments from program accounts to provide goods and services that are covered as qualifying expenses ... . ") chosen by the student or the parent or guardian of the student. (Ark. Code Ann. §6-18-2505).

44.     Such payments are made by the ADE from the Participating Student's account directly to the participating private schools, home school, or participating service providers at the direction of the participating student's parent, in four (4) equal quarterly installments. Ark. Code Ann. §6-1 8-2505(b)(1 ).

45.     "Participating Schools" and "Participating Service Providers" as defined in the LEARNS Act are not "common schools" or "public schools" as those terms are used in Articles 14 and 16 of the Arkansas Constitution.

46.     The LEARNS Act does not contain, authorize or impose any new tax which would be used to fund the Voucher Program, leaving such funds to be derived from existing taxes imposed by local school districts and the State of Arkansas for the public schools. The Revenue Stabilization Acts of 2023 and 2024 separate the school voucher appropriation from all the other school appropriations and lists it among a handful of non-education agencies and programs under the title "Other" general revenue funds. Moving the private-voucher account away from all the other education funds in the Revenue Stabilization Act presumably seeks to avoid the appearance

of unconstitutionally using "public school" or "common school" funds to fund the Voucher Program.

47.    The Voucher Program was first available beginning June 19, 2023 for the school year 2023-2024 to students who had a parent who was a resident of the State of Arkansas, was eligible to enroll in a public elementary or secondary school in this state, and who met one or more of the applicable criteria: (i) children with disabilities; (ii) children who were homeless; (iii) a foster child; (iv) a member of the Succeed Scholarship Program; (v) a child of an active-duty uniformed personnel; (vi) a child enrolling in kindergarten for the first time, or (vii) a child who was enrolled the previous year in a public school that failed to meet certain performance criteria. A maximum of one and one-half percent (1.5%) of the 2022-2023 total public school student enrollment could be approved to participate in the Arkansas Children's Educational Freedom Account Program. Ark. Code Ann. § 6-18-2506.

48.    The Revenue Stabilization Act allotted $31,701,900.00 for the voucher program for the school year 2023-2024.

49.    For the 2024-25 school year, eligibility for the voucher program was enlarged to include students who were eligible the previous year or who were enrolled in public schools rated "D" or "F" under sections 6-15-2105 and 6-15-2106, and students whose parents are veterans identified under Title 38 of the U.S. Code, or in the military reserves, or first responders or law-enforcement officers. A maximum of 3% of the 2022-2023 total public school student enrollment were to be approved to participate in the Voucher Program.

50.    For the school year 2024-2025, the Revenue Stabilization Act allocated $97,487,318.00 for the Voucher Program, a 300% increase over the previous school year allocation. As of the end of May, 2024, the Arkansas Department of Education has approved 106

private schools to participate in the Voucher Program and 13 additional private school applications were pending for approval. Approximately 7,280 students had applied for an Educational Freedom Account, and 6,171 students had been approved. (Source, Arkansas Democrat-Gazette, *"State clears 106 private schools for voucher cash,"* June 2, 2024.)

51.     For the school year 2025-2026, the Revenue Stabilization Act originally allocated $187,487,318 for the Voucher Program. **See Exhibit 5 to Faulkenberry Complaint, 2025-2026 Revenue Stabilization Act, Act 888 of 2025.**

52.     As of early October 2025, on information and belief, more than 51,000 students had applied for vouchers and the expected cost of the Voucher Program for the 2025-26 school year had ballooned to over $326 million ($326,000,000), nearly $50 million ($50,000,000) beyond available revenue. (Source, Arkansas Democrat-Gazette, "*Arkansas Educational Freedom Account Program cost could Top $326M, report finds*", October 1, 2025).

53.     For the 2025-26 school year and each year thereafter, the LEARNS Act declares that there will be *no* limitation on student participation in the Arkansas Children's Educational Freedom Account Program; *i.e.,* the program will be available, beginning with the 2025-26 school year, to all students who are residents of Arkansas. Ark. Code Ann. § 6-18-2506. This will result in another large increase in amounts allocated from public school funds to support the Voucher Program. This will also increase the size of the separate, publicly funded system of private sectarian schools which diverts resources from the constitutionally required "general, suitable and efficient system of free public schools".

54.     LRSD is home to students who, on average, have greater educational needs than students enrolled in the private schools supported by the Voucher Program. As a result of the

Voucher Program, LRSD has fewer students, and consequently fewer resources with which to meet the educational needs of those students.

<em>Sources of Funding for Arkansas Public Schools</em>

55.     Each year, the Arkansas legislature uses a matrix contained in Ark. Code Ann. §6-20-2305 to determine the amount of money necessary in its judgment to provide an Arkansas public school student with an adequate education. For school year 2023-2024, this amount is $7,618.00. This amount is described as "foundation funding." The foundation funding comprises two parts-the local contribution and the state equalization aid.

56.     The local contribution is generated in each district by a uniform rate of taxation ("URT") of 25 mills on taxable real, personal and utility property, with the proceeds thereof to be used solely for the maintenance and operation of public schools. No portion of the funds generated by the URT may be retained by the State. *See* Article 14, Section 3, as modified by Amendment 74; Ark. Code Ann. 6-20-2303(26). In the vast majority of Arkansas school districts, the funds generated by the URT are less than the foundation funding amount.

57.     The State of Arkansas deducts the per-pupil local contribution from the foundation funding amount and pays the difference to local districts as "foundation aid" or "equalization funding."

58.     The calculations of the local contribution and state equalization are made on a per-pupil basis. Because the local contribution is based on the taxable real, personal and utility property located in the school district, the total amount of money generated by the URT is not impacted by the number of public school students who attend public schools within the taxing district.

59.     When a student enrolls in a private school or elects to be home schooled using the Voucher Program funding, the student's public school district local tax generated by the 25-mill

URT imposed by Amendment 70 to the Constitution remains the same but is allocated over fewer students. In other words, the total local funds generated by the URT, which is the "local contribution" to the foundation funding described in LEARNS, does not decrease in total when a student enrolls in a private school or is home schooled, and therefore it is larger on a per pupil basis.

60.    However, the state's contribution to a local district's foundation funding, known as "foundation aid" or "equalization funding," is reduced every time a student either leaves a public school or fails to enroll in a public school.

61.    When a student is home-schooled using the Voucher Program funding, the resident public school district's local tax generated by the 25-mill URT remains the same but is allocated over fewer students. The state's amount of equalization funding goes down in this case.

62.    As a consequence of the lower number of public school students in the foundation funding calculation, the local contribution to foundation funding thereby increases on a per-student basis. The per-student increase from the local contribution results in a reduction in the amount of foundation aid provided by the equalization funding to public schools, thereby providing the money which the State then gives to private schools and private providers under LEARNS.

63.    The State of Arkansas, through the Defendant ADE, is thus using state tax dollars that are not paid to local public school districts to fund Education Freedom Accounts (Vouchers) for the benefit of private persons, private schools and private service providers. Through this "shell game" funding mechanism, local taxpayers are the ones actually paying the money through local and state tax levies that is going to private schools and being used for purely private purposes.

64.    Through this funding mechanism established by the State, which is built into the State school-funding formula and used by LEARNS, the State has incentivized students to leave

16

the constitutionally mandated system of public schools. This state action has thereby reduced the amount of state tax dollars which are paid to local public school districts and shifted the burden of funding vouchers to local school districts in violation of the Arkansas Constitution.

65.    The LEARNS Act, having already been signed into law, the Defendants in 2023 set about to gloss over the problem of using public school funds for private schools and home schooling through use of other appropriations and the Revenue Stabilization Act. The Revenue Stabilization Act is the concluding enactment of regular and fiscal sessions of the Legislature that distributes tax receipts among the many programs that are funded by taxes that specify they are to be used for such services as public schools and the state's charitable and eleemosynary institutions.

66.    The appropriations and the Revenue Stabilization Acts enacted in 2023 and 2024 attempted to justify spending public school funds for private schools by separating the line item for the Voucher Accounts from all the other school programs identified by names like "Public School Fund" and "General Education Fund" (containing some fifteen components), and moving the Voucher Program line item instead to another section of the appropriations and Revenue Stabilization Acts labeled "OTHER FUNDS."

67.    Under that "OTHER FUNDS" category, in the 2023 Revenue Stabilization Act, appears: "DESE - Education Freedom Accounts," followed by the allocations of $31,701,900 for fiscal 2023-24 and $97,487,318 for fiscal 2024-2025. Additionally, the appropriation bill for the Education Department, introduced after the enactment of the LEARNS Act in 2023, lists the appropriation (the maximum amount that the Education Department can spend on the program if the funds become available) for the vouchers and says that it is appropriated to the agency by the "Arkansas Children's Educational Freedom Account Fund," as if the voucher fund had an entirely

separate but unidentified and mysterious source of money besides the taxes levied by law for the public schools and certain other public programs like the state's charitable institutions and colleges.

68.     The Constitutional prohibition against spending public school funds, or funds of the State for the benefit of schools or universities, for any other than for the respective purposes to which it belongs cannot be ignored by changing the nomenclature of the funding sources. Further, in school year 2025-2026 and thereafter, every child in the state who is eligible to go to Arkansas public schools will become eligible for private education vouchers. Such expansion of the program will require hundreds of millions of dollars.

69.     Thus, the Voucher Plan is a funding plan which, by design, takes state money which otherwise would be used to enhance public schools and diverts that money to private schools and other providers under the LEARNS Act in violation of Article 14, §2 of the Arkansas Constitution.

### The Voucher Program Violates
### The Establishment Clause of the First Amendment
### To the United States Constitution

70.     Approximately eighty percent (80%) of the private schools on the ADE-approved list at **Exhibit No. 1** to the Faulkenberry Complaint are sectarian *(i.e.,* religious-affiliated or sponsored) schools. Based on the amount of Voucher Program funding provided to all private schools in 2023, nine (9) of the ten (10) private schools receiving the greatest amount of Voucher Program funding are private sectarian schools, and 28 of the 30 schools receiving the greatest amount of funding are private sectarian schools. According to a recent report by the University of Arkansas Department of Education Reform, roughly 81% of the private schools which received more than $100,000 in voucher funds for the spring 2025 semester were religiously affiliated. Source, Arkansas Democrat Gazette, "Student Account Funds Favor Religious Schools," October 19, 2025.

71.     The purpose of sectarian schools is to provide an education to its students that include teachings on religious subjects not taught in public schools, or teachings on traditional subjects that are offered by public schools *(e.g.,* science, history, mathematics, etc.), but with a religious aspect or perspective interwoven with the basic subject. As the United States Supreme Court sated in *Wolman v. Walter,* 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977), *quoting* from *Meek v. Pittenger,* 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975):

> "The very purpose of many of those schools is to provide an integrated secular and religious education; the teaching process is, to a large extent, devoted to the inculcation of religious values and belief. See *Lemon v. Kurtzman,* 403 U.S., at 616-617, 91 S.Ct. (2105) at 2113. Substantial aid to the educational function of such schools, accordingly, necessarily results in aid to the sectarian school enterprise as a whole. '(T)he secular education those schools provide goes hand in hand with the religious mission that is the only reason for the schools' existence. Within the institution, the two are inextricably intertwined.' *Id.,* at 657, 91 S.Ct. (2105) at 2133. (opinion of Brennan, J.)." 421 U.S., at 366, 95 S.Ct., at 1763.

*Wolman,* 433 U.S. 229, 249-250.

72.     The LEARNS Act provides state funds directly to private sectarian schools for tuition, teaching, instructional materials, curriculum and supplemental materials or supplies required by a course of study that is determined largely, if not exclusively, by the sectarian school. There are no restrictions in the LEARNS Act on the content of any textbooks or other instructional materials that are provided to the students or otherwise used by the private sectarian schools in the teaching of the students that require separating secular, non-religious teachings from teachings with religious content or connotations.

73.     The sectarian educational curriculum content and modes of teaching are described on the internet websites of the private sectarian schools that are on the ADE list of approved private schools. The following are excerpts from the internet postings of some

of those schools[1], all of which are approved by the ADE for receipt of Voucher Program funding, and that are typical of the internet postings of all the private sectarian schools approved by ADE:

### Central Arkansas Christian Academy (North Little Rock):

The textbooks students use are filled with connections to Scripture and real-world examples of how a strong Biblical worldview should be interwoven into the understanding and application of all subject matter.

- Biblical Choices for a New Generation program, grades Pre-K 3 through 4
- Purposeful Design Bible program, grade 5
- Bible courses, which set the framework for every other subject (Middle School)
- Bible courses covering Old and New Testament surveys and the Life of Christ (High School)

### The Huda Academy (Litle Rock):

The shared vision of The Huda Academy is to fulfill the educational requirements of our children based on the teachings of the Holy Quran and the Sunnah of the Prophet Muhammad (peace be upon him), and pursue a holistic approach to education that nurtures the individual's spiritual, moral, intellectual, social, and physical development. We strive to instill habits of lifelong learning of Islamic values, promote the importance of showing our faith through our actions and service to others, and nurture the development of a strong Islamic identity.

(Source: The Huda Academy Strategic Plan (2019-2024)

### The Joshua Academy (Van Buren):

Truth flows from the Bible and permeates everything that we do at Joshua Academy, from curriculum, to teaching methods, to how we create and nurture our relationships.

At our heart, is a curriculum developed by the Center for Redemptive Education (CRE). The CRE exists to articulate, cultivate, demonstrate and facilitate the quest to align with God's design for teaching and learning, using an approach that is Biblical, Relational, Integral and Experiential.

---

[1] These examples are provided merely to illustrate the integral role that teaching of religious beliefs and doctrine play in the curricula of the many private sectarian schools that have been approved by the Arkansas Department of Education for participating in the Voucher Program, and not as criticism, disapproval or disagreement with any such religious beliefs or doctrine.

Redemptive Education IS biblical - not just a Bible verse stuck to its surface. Everything we do and every person we encounter is envisioned through a biblical worldview. Decisions are made and lessons delivered with God and biblical truth at the center of it all. All truth is God's truth.

## Community Christian School (Siloam Springs)

We want our students to have a quality Christian education that will propel each one into the God-given call for their life.
- Weekly Devotions
- Scripture Memorization
- Enrichment Classes
- Field Trips
- Merit Stores

## The Legacy Academy (Lockesburg)

Without shame, Legacy Academy offers a true faith-based education. We firmly believe that God cannot be divorced from learning. Knowledge cannot exist apart from Him. You cannot remove Him from the discussion of science, art, history, math, language, or any other subject. He is the source of all things. Knowledge does not exist in a vacuum and schools should exist to assist parents in training children in a correct world- and life- view.

## Harvest Time Academy (Fort Smith):

Our students begin every day with Bible stories and prayer while learning about the world around them the way God designed it to be.

## Christ The King Catholic School (Little Rock):

Religion is taught daily and our kindergartners sit with their 5th grade guardian angels at Mass each Friday. All students attend Mass together each Friday morning beginning at 9 a.m. Holy Days of Obligation that fall on a school day are celebrated at 9 a.m.

## West Memphis Christian School (West Memphis):

The educational experience at West Memphis Christian School is built upon the timeless truth of God's Word-The Holy Scriptures. With this eternal foundation, our school complements the teaching of the Christian home and church.

### Shiloh Christian School (Rogers):

At Shiloh Christian School, we believe that all truth is God's Truth. In everything we do from an elementary language lesson, to an advanced physics class in our secondary, our staff looks for unique ways to integrate God's truth into the lives and education of our students. Each student from PreK4 - 12th grade has a Christian Studies/Bible class built into their weekly course work. All students participate in a weekly chapel service featuring special speakers, student participation, and worship through music.

### Cabot Christian School (Cabot):

Cabot Christian School is committed to academic development and spiritual growth for every student. We start each school day with prayer and the pledge of allegiance; Bible is taught as a core class.

74.    The principal and primary purpose of the private sectarian schools which are eligible to receive state funds under the Voucher Program is, by their own acknowledgment, to promote and advance the religious beliefs and doctrines held and advocated by the religion, church or other organization that is the school's sponsor and benefactor. The direct payment of public funds, including funds derived from taxes levied and assessed for the public schools of the State of Arkansas, to such private sectarian schools furthers such purpose; fosters an excessive government entanglement with religion, and is a violation of the Establishment Clause of the First Amendment to the United States Constitution. *Meek* v. *Pittenger,* 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975); *Wolman* v. *Walter,* 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977); *Lemon* v. *Kurtzman,* 4023 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); *Levittv. Committee/or Public Education,* 413 U.S. 472, 93 S.Ct. 2814, 37 L.Ed.2d 736 (1973); *Committee for Public Education* v. *Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973).

### *The LEARNS Act Voucher Program Discriminates*
### *Against Students and Parents/Guardians On The Basis*
### *Of Their Income or Financial Status*

75.    The private schools approved by the ADE charge tuition to the students or their

parents/guardians to attend such schools. The tuition amount frequently varies depending on the student's grade level, and other factors determined by the individual schools.

76.    Private school tuition frequently exceeds the "foundation funding" amount allocated by the State to students' Educational Freedom Fund (Vouchers) and available for distribution to the private schools (currently approximately $6,864.00). If the tuition of the private school chosen by the student or the parents/guardian exceeds the amount in the student's Voucher account, that excess must be paid by other sources, such as the student and/or parent/guardian.

77.    If the parent/guardian of the student cannot pay the amount of the tuition in excess of the Voucher account funding, then the student cannot attend the school. Thus, the Voucher Program discriminates against persons whose condition in life does not permit payment of the additional amount required to cover the full tuition.

78.    This creates an education divide between more affluent students, who have the option of attending private schools partially funded by vouchers, and less affluent students, who are unable to do so.

79.    The LEARNS Act, by approving public funding for private schools that do not provide a free education and benefits to all children of the State, regardless of their race, religion, sexual identity, disability or condition in life, violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

### The Voucher Program Discriminates Against Public Schools on the Basis That Private Schools are not Required to Meet the Same Standards to which Public Schools are Held

80.    Private schools are not held to the same standards under the LEARNS Act as LRSD and other public schools. Public schools are required to admit and provide for the educational requirements of all children of the State of Arkansas without regard to race, religion, sexual

identity, disability or condition in life. Further, the provision by the State of the educational requirements for all such children, is required to be without charge.

### The Voucher Program Discriminates
### Against Children with Disabilities

81.   As a condition of participating in the Program, parents of and students with disabilities must agree to comply with the private school's prescribed requirements of all enrolled students and must affirmatively waive or consent in writing to diminishment of their rights under the Individuals with Disabilities Education Act (IDEA).

82.   The requirement that a disabled student and his/her parent must waive their rights under IDEA discriminates against such disabled student and his/her parents by denying them equal rights and opportunities to attend such schools with non-disabled students.

### The LEARNS Act Voucher Program Violates
### Article 2, Section 24 of the Arkansas Constitution

83.   Article 2, Section 24 of the Arkansas Constitution provides, in relevant part:

> ... ; no man can, of right, be compelled to attend, erect or support any place of worship; or to maintain any ministry against his consent. .... ; and no preference shall ever be given, by law, to any religious establishment, denomination or mode of worship, above any other.

84.   Through the LEARNS Act Voucher Program, and the provision of money derived from public funds to the sectarian private schools named in ADE' s list of approved private schools, the State of Arkansas is compelling the taxpayers of the State of Arkansas, who are the source of such public funds, to "support any place of worship," and "to maintain any ministry against his (her) consent. ... ," in violation of Article 2, Section 24 of the Arkansas Constitution.

85.   In addition, through the LEARNS Act Voucher Program, and the provision of money derived from public funds to the sectarian private schools named in ADE's list of approved

private schools, the State of Arkansas is giving preference, by law, to certain religious establishments, denominations or modes of worship, in that all other religious establishments, denominations or modes of worship are not provided access to such public funds.

86.     Arkansas Constitution Article 14, Section 1, requires that "the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education."

87.     To ensure the maintenance and support of that general, suitable and efficient system of free public schools, Arkansas Constitution Article 14, Section 2, further directs that, "No money or property belonging to the public school fund, or to this State, for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs." Note that "public school fund" in the Constitution is lower case, meaning that it refers to any funds used for the public schools, of which there have always been a number of such funds, and not merely one that is identified in statutes, including appropriations and the Revenue Stabilization Act, as the "Public School Fund."

88.     Article 14, Section 3, goes further to establish a funding mechanism which reserves certain property taxes to local or "common" school districts. It established a uniform *ad valorem* property tax rate of 25 mills to be levied on the assessable value of all taxable real, personal and utility property in the state to be used solely for maintenance and operation of the public schools.

89.     The LEARNS Act violates these constitutional principles in that if a student leaves a public school, or never enrolls in a public school in the first instance, and enrolls in a private school, or chooses to home school, the LEARNS Act transfers from the taxes belonging to the State for the use and benefit of the public schools the amount of money calculated by the State as the cost of that student's education to the private school, home school or other private provider of

that student's tuition, fees, uniforms, supplies, equipment, access to technology and other materials.

90.     The Arkansas Supreme Court has consistently upheld the Constitutional requirement that public school funds may not be used for non-public school purposes. *See, e.g. Chandler v. Bd. of Trustees of the Teacher Ret. Sys.,* 236 Ark. 256, 365 S.W.2d 447 (1963); *Terry v. Thorntion,* 207 Ark. 1019, 183 S.W.2d 787 (1944); *State Bd. of Educ. v. Aycock,* 198 Ark. 640, 130 S.W.2d 6 (1939); *Ward v. Bailey,* 198 Ark. 27, 127 S.W.2d 272 (1939); *Walls v. State Bd. of Educ.,* 195 Ark. 955, 116 S.W.2d 354 (1938); *Scott v. Magazine Sp. Sch. Dist.,* 173 Ark. 1077, 294 S.W. 365 (1927); *Cty. Bd. of Educ. v. Austin,* 169 Ark. 436, 276 S.W. 2 (1925); *Special Sch. Dist. v. Bangs,* 144 Ark. 34, 221 S.W. 1060 (1920).

91.     The provisions of the LEARNS Act that create, and the Arkansas Board of Education/ DOE rules that implement, the Arkansas Children's Educational Freedom Account Program violate Article 14, Sections 1, 2, and 3, and Article 16, Section 11, of the Arkansas Constitution. LRSD seeks a declaratory judgment that the Arkansas Children's Educational Freedom Account Program set forth at Ark. Code Ann. § 6-18-2501 to § 6-18-2511, and the corresponding Rules promulgated by the Arkansas State Board of Education, implementing the funding and payment provisions of the LEARNS Act relative to the voucher program, are unconstitutional and void.

92.     LRSD also seeks (i) an injunction to be issued to each of the Defendants prohibiting them from further implementation of the LEARNS Act Voucher Program; and (ii) a declaratory judgment that the Defendants have acted beyond the scope of their constitutional authority in implementing an unconstitutional law.

## COUNT I

### The Voucher Program, as Applied, Violates the
### Establishment Clause of the First Amendment to
### The United States Constitution

93.     The Establishment Clause of the First Amendment to the United States

Constitution provides:

> Congress shall make no law respecting an establishment of religion,
> or prohibiting the free exercise thereof; * * *.

94.     The Voucher Program of the LEARNS Act violates the Establishment Clause in

that the sectarian schools to which the Arkansas public school funds are diverted, and which

constitute a large majority of the private schools approved by ADE for receipt of such funds,

include in and infuse into their curricula subjects and teachings that include the establishment,

perpetuation or promotion of religion and religious beliefs and that are designed and intended to

instill those beliefs into the students.

95.     In addition, the academic schedule of the students who attend such schools includes

mandatory attendance at religious services or "chapels" at which religious beliefs are taught for

the establishment, perpetuation or promotion of a particular religion or religious beliefs, and that

are designed and intended to instill those beliefs into the students.

96.     The Voucher Program directs financing to a core function of a religious

denomination or church that sponsors a private sectarian school: the teaching of religious truths to

young children. For that reason, the constitutional demands for "separation" between the State and

religion is of particular constitutional concern. See, *e.g., Lee v. Weisman,* 505 U.S., 577, 578, 112

S.Ct. 2649 ("[I]n the hands of government what might begin as a tolerant expression of religious

views may end in a policy to indoctrinate and coerce. Prayer exercises in elementary and secondary

schools carry a particular risk of indirect coercion."); *Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261,

8 L.Ed.2d 601; *Edwards v. Aguillard,* 482 U.S. 578, 583-584, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) ("the Court has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools").

97.     Private schools that participate in Arkansas' Voucher Program are advocates of the importance of early religious education and indoctrination. As demonstrated in the quotations set forth above from some of the private school's websites, they proclaim their goals are "to create a Biblical worldview in the minds of our young people," "communicate the gospel," "provide opportunities to ... experience a faith community," "provide ... for growth in prayer," and "provide instruction in religious truths and values;" conduct weekly devotions;" require "scripture memorization;" "begin every day with Bible stories and prayer;" require attendance at Mass, and other obligatory religious teaching and attendance.

98.     LRSD does not contend that such private school teaching of religion is inherently undesirable, but that *government funding* of this kind of religious schooling is contrary to the intent of our founding fathers in writing the Establishment Clause of the First Amendment of the United States Constitution and Article 2, Section 24 of the Arkansas Constitution; and that such funding violates those provisions and creates an excessive and impermissible entanglement of government in the religious organizations.

99.     In the State of Arkansas, the overwhelming proportion of the millions of dollars of appropriations for Voucher money *must* be spent on religious schools if it is to be spent at all, due to the vast majority of the Department of Education approved private schools being sectarian schools. The Voucher money will thus pay for eligible students' instruction, not in traditional secular subjects alone (into which the private secular schools interfuse with the school's religious views) but on the subject of particular religions as well, in schools that are founded for the express

purpose of teaching religious doctrine and to imbue a religious dimension into the teaching of all

subjects.

100.    The effect of the Voucher Program is to force the taxpayers of Arkansas to

contribute to the establishment, propagation and perpetuation of religious schools that teach beliefs

and opinions with which individual taxpayers may or may not agree, and over which he or she has

no voice in selecting for the expenditure of his or her tax money.

## COUNT II

### The Voucher Program Violates The
### Equal Protection Provisions of the Fourteenth Amendment
### To the United States Constitution

101.    The Equal Protection clause of Section 1 of the Fourteenth Amendment to the

United States Constitution provides:

> No State shall make or enforce any law which shall abridge the privileges or
> immunities of citizens of the United States; nor shall any State deprive any person
> of life, liberty, or property, without due process of law; nor deny to any person
> within its jurisdiction the equal protection of the laws.

102.    Although the private schools receive substantial public school funds under the

Voucher Program of the LEARNS Act, neither the Department of Education nor any other state

agency is permitted to regulate the admissions policies, expulsion policies, educational program

or procedures of a private school that accepts Voucher Program funds.

103.    The LEARNS Act requires every parent who enrolls a child in the Voucher

Program to sign an agreement promising not to enroll the child in a public school while

participating in the Voucher Program, although the child could take approved courses at a public

school if it is participating as an approved provider of services for children in Voucher Programs.

104.    Private schools eligible to receive public funds under the Voucher Program have

little of the accountability that LRSD and other public schools do regarding how the money paid

to them in the Voucher Program is spent, and what outcomes it achieves. Private schools need not be open to all students. Although private schools participating in the Voucher Program are prohibited from discriminating on the basis of race, color, or national origin, they are not prohibited from excluding or discriminating against students on any other basis they choose, including religion, sexual orientation, gender identity, past academic performance, standardized test scores, disciplinary history, or disability status. And, as a rule, Arkansas private schools are not open to all students, and reserve the right to exclude students for one or more of the above-mentioned reasons.

105.    Private schools are not required to alter or discontinue their creeds, practices, admissions policies, or curriculums to receive public funds through the Voucher Program. To the contrary, as a condition of participating in the Voucher Program, parents and students must agree to comply with the private school's prescribed curriculum, dress code, and other requirements of enrolled students, and must waive or consent to diminishment of their rights under the Individuals with Disabilities Education Act (IDEA).

106.    Private schools that will receive public funds from the Voucher Program are not subject to the same health and safety requirements imposed on public schools, and unlike public schools, there are no building safety standards specifically in place for private schools.

107.    Private schools receiving public funds from the Voucher Program need not comply with the same academic standards imposed on public schools. While private schools receiving Voucher Program funds must have a curriculum that "includes" courses set forth in the state's diploma requirements, they are not required to comply with all diploma requirements applicable to LRSD and other public schools, such as offering Advanced Placement (AP) classes and providing at least 120 hours of instruction per credit unit.

108.    The Department of Education may delegate to a "qualified organization" the authority to administer the Voucher Program; however, what constitutes a "qualified organization" is not defined by The LEARNS ACT. Despite the name, a "qualified organization" is not required to have any particular qualifications or expertise in educational administration. Such organizations need not be non-profit entities, nor are they required to have any particular safeguards in place to protect against financial malfeasance or ensure compliance with educational privacy laws.

## COUNT III

### *The LEARNS Act Voucher Program Violates*
### *Article 2, Section 24 of the Arkansas Constitution*

109.    The effect of the Voucher Program is to force the taxpayers of Arkansas to contribute to the establishment, propagation and perpetuation of religious schools that teach beliefs and opinions with which they may or may not agree, but over which they have no voice in selecting for the expenditure of their tax money.

## COUNT IV

### *The LEARNS Act Violates Article 14, §1 of the Arkansas Constitution*

Article 14, § 1, of the Arkansas Constitution states as follows:

### § 1. Free public schools

Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education.

110.    The State must maintain a general, suitable and efficient system of *free* public schools, meaning that the students shall not be required to pay any sum for their elementary and secondary public school education in addition to that paid by the State. This requirement excludes, by its plain terms, any other system which is not free and not public.

111.    Nowhere in the Arkansas Constitution is there authorization for the use of state tax revenue for the stated purpose of funding private schools and paying private providers of services, such as "home schools."

112.    Nor does the LEARNS Act require private schools and participating vendors to provide their services to students at no additional cost. These schools and providers are at liberty to charge additional tuition, fees, materials costs and other amounts to students who receive vouchers, thereby depriving those students of the *free* public education that the Arkansas Constitution requires of the State. Thus, private schools are not part of a general, suitable and efficient system of free public schools.

113.    In addition, the private "Participating Schools" are not "public" or "common" schools under Arkansas law because they may exclude students from enrollment based on the Participating School's own enrollment policies. There is no authorization under the Arkansas Constitution for such schools.

114.    Therefore, the Voucher Program, by its own plain terms, violates Article 14, Section 1 of the Arkansas Constitution.

## COUNT V

### *The LEARNS Act Violates Article 14, §2 of the Arkansas Constitution*

115.    The Voucher Program established under the LEARNS Act, by which public funds assessed and collected for the use and benefit of the public schools of Arkansas may be paid to private schools or to "participating service providers," also violates Article 14, Section 2 of the Constitution of Arkansas, which provides as follows:

### § 2. Public school fund-Use

No money or property belonging to the public school fund, or to this State, for the benefit of schools or universities, shall ever be used for any other than for

the respective purposes to which it belongs.

116.    Article 14, Section 2, of the Arkansas Constitution prohibits "money or property belonging to *the public school fund"* from being diverted to other purposes. The words "public school fund" are in lower case, meaning that it is a common noun, not the name of a specific, named fund, and that it applies to all money raised for the public schools no matter what the authors of a bill may choose to call it.

117.    The Voucher Program takes revenues which belong to the public school fund or to this State and expends those funds for private purposes which are not authorized by the Constitution. There is no specific fund entitled "the Public School Fund" into which all money intended for the public schools is appropriated or deposited. The "Public School Fund" identified in appropriations and the Revenue Stabilization Act is currently only one of many public school funds, each distributing tax receipts for one or more programs for public school students, such as school construction. The State's practice of allocating an appropriation to a fund or account for private schools in the Revenue Stabilization Act that bears a name other than Public School Funds does not avoid the constitutional prohibition contained in Article 14, Section 2. Similar constitutional and statutory references to "common schools" use lower case.

118.    Article 14, Section 2 also prohibits "money or property belonging ... to *this State, for the benefit of schools or universities"* from being diverted to any other purpose. Thus, the framers of Section 2 inserted two phrases that make clear that regardless of whether money is considered to be "public school funds" or "money or property belonging to the State for the benefit of schools or universities," it can never be used for any other than for those respective purposes.

119.    Since 1874, the state has identified school appropriations every two years by many different names, including "Common School Fund" or "Public School Fund." The current Revenue

Stabilization Act and individual appropriations for various school programs includes two dozen different funds authorizing expenditures for various elements of elementary and secondary education, but also includes a separate allotment for the private-school vouchers under the name of "Arkansas Freedom Education Accounts."

120.    Carving out public funds for a non-public school Voucher Program, identifying it with a name other than "Public School Fund," and then separating it from other education funds and moving to a catch-all section of miscellaneous appropriations flouts and makes a mockery of the constitutional restraint in Article 14, §2. Simply moving the appropriation for the Voucher Program to a separate part of the Revenue Stabilization Act and calling it something other than a public or common school fund does not render it constitutional. It is, after all, labeled "Arkansas Freedom *Education* Accounts," is clearly for educational purposes (although not of a type permitted to be funded by the State under the Arkansas Constitution), and constitutes public funds. Under Article 14, §2, it cannot be used for any purpose other than public schools.

### COUNT VI

### *The LEARNS Act Violates Article 14, §3 of the Arkansas Constitution*

121.    The Voucher Program established under the LEARNS Act, by which public funds assessed and collected for the use and benefit of the public schools of Arkansas may be paid to private schools, home schooling or to participating service providers, violates Article 14, Section 3 (a) and (b)(l) and (3) of the Constitution of Arkansas, which state in relevant part:

### § 3(a). School districts - Tax levies

(a) The General Assembly shall provide for the support of *common schools* by general law. In order to provide quality education, it is the goal of this state to provide a fair system for the distribution of funds. It is recognized that, in providing such a system, some funding variations may be necessary. The primary reason for allowing such variations is to allow school districts, to the extent permissible, to raise additional funds to enhance the educational system within the school district.

It is further recognized that funding variations or restrictions thereon may be necessary in order to comply with, or due to, other provisions of this Constitution, the United States Constitution, state or federal laws, or court orders. (Italics added)

(b)(1) There is established a uniform rate of ad valorem property tax of twenty-five (25) mills to be levied on the assessed value of all taxable real, personal, and utility property in the state *to be used solely for maintenance and operation of the schools.* (Italics added)

(2) ...

(3) The uniform rate of tax shall be assessed and collected in the same manner as other school property taxes, but the net revenues from the uniform rate of tax shall be remitted to the State Treasurer and distributed by the state to the school districts as provided by law. *No portion of the revenues from the uniform rate of tax shall be retained by the state. The revenues so distributed shall be used by the school districts solely for maintenance and operation of schools.* (Italics added)

...

(c )(1) In addition to the uniform rate of tax provided in subsection (b), school districts are authorized to levy, by a vote of the qualified electors respectively thereof, an annual ad valorem property tax on the assessed value of taxable real, personal, and utility property *for the maintenance and operation of schools and the retirement of indebtedness.* (Italics added)
(2) ... (n/a)
(3) No tax levied pursuant to subsection (c)(1) of this section shall be appropriated to any other district than that for which it is levied.

122.    Article 14, Section 3 specifically states that "The General Assembly shall provide for the support of common schools by general law," and that the money produced by the ad valorem property tax is "to be used solely for maintenance and operation of the schools." The legal maxim *expressio unius est exclusio alterius,* also known as the negative-implication canon, means that "the express designation of one thing may properly be construed to mean the exclusion of another." *State ex rel. Rutledge v. Purdue Pharma L.P,* 624 S.W.3d 106, 111, 2021 Ark. 133, 9-10 (2021) (citing *Buonauito v. Gibson,* 2020 Ark. 352, at 8,609 S.W.3d 381, 386; and Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts,* 107 (2012) * 10 ( describing the maxim as an interpretative canon known as "negative implication").

123.   The specific authorization of tax levies in support of common schools results in the constitutional exclusion of support for schools which are not "common schools" or "public schools," especially when read in light of the very specific requirement that Arkansas maintain "a general, suitable and efficient system of free public schools ... " which is clearly stated in Article 14, § 1. There is no ambiguity in Sections 1, 2 or 3 of Article 14 of the Arkansas Constitution, and it cannot be read to include private or home schools, or any other form of education other than free public schools.

124.   The State is employing the funding mechanism for public schools to support a different group of private schools by effectively diverting local tax revenues to fund vouchers, all in violation of the foregoing provisions of Article 14, Section 3 of the Arkansas Constitution.

## PRAYER FOR RELIEF

**WHEREFORE,** LRSD prays that the Court grant the following relief:

(i) declare that the Voucher Program as adopted and administered by the State of Arkansas is unconstitutional under the Establishment Clause of the First Amendment to the United States Constitution.

(ii) declare that the Voucher Program as adopted and administered by the State of Arkansas is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

(iii) declare that the Voucher Program as adopted and administered by the State of Arkansas is unconstitutional as being in violation of Article 2, Section 24 of the Arkansas Constitution.

(iv) declare that the Voucher Program as adopted and administered by the State of Arkansas is unconstitutional as being in violation of Article 14, Sections 1, 2 and 3 of the Arkansas

Constitution.

(v) Upon the findings requested in Subsections (i), (ii) and (iii) above, or any of them, enter a permanent injunction enjoining the Defendants from any further actions related to the establishment, implementation, or administration of the Voucher Program.

(vi) enter a Declaratory Judgment declaring that the Voucher Program *(i.e.,* the "Arkansas Children's Educational Freedom Account Program") is unconstitutional; that the same is void and of no further effect; and that further implementation of the Voucher Program of the LEARNS Act by the Defendants and their successors in office be permanently enjoined.

(viii) Award LRSD its costs expended, including reasonable attorneys' fees; and

(ix) Grant to LRSD all other relief which is just and equitable.

Respectfully submitted,

Christopher Heller (Ark. Bar No. 81083)
Khayyam M. Eddings (Ark. Bar No. 2002008)
Liz K. Harris (Ark. Bar No. 2018111)
Friday, Eldredge & Clark, LLP
400 West Capitol, Suite 2000
Little Rock, Arkansas 72201-3493
Telephone:  (501) 370-1506
Telephone:  (501) 370-1417
Telephone:  (501) 370-1802
Email:      heller@fridayfirm.com
Email:      keddings@fridayfirm.com
Email:      lharris@fridayfirm.com

By:  Christopher Heller

*Attorneys for Plaintiff Intervenor Little Rock School District*

37