IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

GWEN FAULKENBERRY,
SPECIAL RENE SANDERS,
ANIKA WHITFIELD, AND
KIMBERLY CRUTCHFIELD                                                                PLAINTIFFS

v.                              Case No. 4:25-CV-592-DPM

ARKANSAS DEPARTMENT OF EDUCATION, ET AL.                           DEFENDANTS

### LITTLE ROCK SCHOOL DISTRICT'S BRIEF ON STANDING

*LRSD has Article III standing to intervene.*

LRSD satisfies all requirements for Article III standing. It faces concrete institutional injuries from the State's implementation of the LEARNS Act, asserts its own legal interests, and presents a live case or controversy suitable for judicial resolution. LRSD's proposed Complaint in Intervention alleges facts showing that the challenged Voucher Program is causing injury in fact to LRSD, which is traceable to the LEARNS Act, and which can be remedied by a favorable decision in this case. *E.g.* LRSD's Proposed Amended Complaint in Intervention, ¶¶ 9, 11, 25, 52, 53, 54, 62, 87 and 89.

LRSD's injury is concrete, particularized and continuing. The LEARNS Act's implementation directly alters LRSD's authority, finances, and statutory obligations to operate public schools. These are typical institutional injuries that satisfy Article III. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 72 (1978). As the Fifth Circuit held in *Rogers v. Brockett*, 588 F.2d 1057 (5th Cir. 1979), such interference with a district's management and funding of its schools easily satisfies Article III's injury requirement. Defendants' claim that LRSD lacks standing as a "creature of the state" misreads precedent and ignores the modern understanding of Article III standing and the Supremacy Clause.

1

*Things changed in 1960.*

The Third Circuit in *Ocean Cty. Bd. of Comm'rs v. AG of New Jersey.*, 8 F.4d 176 (3rd Cir. 2021) noted the "line of cases dating back centuries" in which "the Supreme Court rejected the idea that political subdivisions could pursue constitutional claims against their creator states in federal court". The court then said, "Things changed, however, in 1960":

> In *Gomillion v. Lightfoot*, the Supreme Court limited the sweeping language of its earlier opinions that suggested a per se bar on political subdivision suits. 364 U.S. 339, 81 S. Ct. 125, 5 L. Ed 2.d 110 (1960). Although the petitioners in *Gomillion* were individuals - not political subdivisions - the Court spoke broadly about the powers of a state legislature vis-à-vis its subdivisions. *Id.* at 344-45. "Legislative control of municipalities, no less than other state power, lies within the scope of relevant limitations imposed by the United States Constitution." *Id.* Earlier language seemingly to the contrary, the Court cautioned, "must not be applied out of context." *Id.* at 344. The "unconfined dicta" from cases like *Hunter [v. Pittsburgh*, 207 U.S. 161 (1907)] confirms only "that the States' authority is unrestrained *by the particular prohibitions of the Constitution considered in those cases*." *Id.* (emphasis added). Critical to this appeal, none of the early cases barring subdivision suits addressed the Supremacy Clause.

*Ocean Cnty. Bd. v. Comm'rs v. AG of New Jersey*, 8 F.4th 176, 180 (3rd Cir. 2021).

The *Ocean County* court noted that since the Supreme Court's opinion in *Gomillion*, "three of our sister courts of appeals have permitted subdivisions to sue their creating states under the Supremacy Clause. *Id.*, *citing Tweed - New Haven Airport Auth. v. Tongs*, 930 F.3d. 65, 73 (2nd Cir. 2019) (allowing such suits as a matter of substantive law); *Branson Sch. Dist. RE - 82 v. Romer*, 161 F3.d 619, 628-29 (10th Cir. 1998) (allowing such suits, but discussing it as a matter of standing); *Rogers v. Brockett*, 588 F2.d 1057, 1070-71 (5th Cir. 1979). Only one circuit, the Ninth Circuit, has barred such subdivision suits. *Id., citing City of San Juan Capistrano v. Cal. Pub. Utils. Comm'n*, 937 F.3d. 1278, 1280-81 (9th Cir. 2019).

*Gomillion* laid the groundwork for the Second, Third, Fifth and Tenth Circuit cases allowing political subdivisions to sue the states that created them. In *Gomillion*, Black plaintiffs

challenged an Alabama law "redefining the boundaries of the City of Tuskegee", arguing that enforcement of the statute would constitute "discrimination against them in violation of the Due Process and Equal Protection Clauses of the 14th Amendment to the Constitution and will deny them the right to vote in defiance of the Fifteenth Amendment." *Id.* at 340.

The District Court granted the State's Motion to Dismiss, finding that it had "no control over, no supervision over, and no power to change any boundaries of municipal corporations fixed by a duly convened and elected legislative body, acting for the people in the State of Alabama." *Id.* at 340-41. The Fifth Circuit affirmed the District Court. *Id.* at 341. The Supreme Court granted certiorari because "serious questions were raised concerning the power of a State over its municipalities in relation to the Fifteenth Amendment." *Id.*

The "sole question" before the Court was whether the plaintiffs' allegations "entitle them to make good on their claim that they are being denied rights under the United States Constitution." *Id.* The State of Alabama, echoing *Hunter v. Pittsburgh* and *City of Trenton v. New Jersey*, argued that its power over municipal boundaries was absolute and unreviewable in federal court. The Supreme Court emphatically disagreed:

> A correct reading of the seemingly unconfined dicta of *Hunter* and kindred cases is not that the State has plenary power to manipulate in every conceivable way, for every conceivable purpose, the affairs of its municipal corporations, but rather that the State's authority is unrestrained only by the particular prohibitions of the Constitution considered in those cases.

*Gomillion*, 364 U.S. 339, 344–45 (1960).

That passage put to rest the broad "creature of the state" theory that Defendants rely on here. *Gomillion* made clear that state control over municipalities ends where federal constitutional limits begin.

The Fifth Circuit in *Rogers v. Brockette*, 588 F.2d 1057 (5th Cir. 1979), relied on *Gomillion* to explain that the *Hunter* and *Trenton* line of cases are substantive holdings that the Constitution does not interfere in states' internal political organization — not jurisdictional bars to suit.

*Gomillion*, *Ocean County* and *Rogers* demonstrate that the Constitution and the Supremacy Clause provide both the source and the justification for LRSD's standing here. Most federal courts now recognize that political subdivisions can — and must — challenge state laws that violate the higher authority of the United States Constitution. *See, e.g., Ocean County*, 8 F.4th at 180 (noting that three federal courts of appeals permitted subdivisions to sue their states, with the Third Circuit becoming the fourth, while only one did not).

***Modern precedent allows political subdivisions to challenge state actions under the Supremacy Clause and federal law.***

The Supreme Court and multiple courts of appeals have held that political subdivisions may bring claims under the Supremacy Clause and federal law. These cases draw a clear distinction between (1) constitutional provisions conferring individual rights—such as the Fourteenth Amendment—and (2) structural provisions, like the Supremacy Clause, that preserve the federal-state balance. The former do not apply to municipalities; the latter do.

The Fifth Circuit's decision in *Rogers* provides a good example. There, a Texas school district challenged a state statute under the Supremacy Clause, arguing it conflicted with federal law. The court held that municipal-standing cases such as *City of Trenton v. New Jersey*, 262 U.S. 182 (1923), and *Hunter v. City of Pittsburgh*, 207 U.S. 161 (1907), were substantive interpretations of specific constitutional amendments, not "standing" precedents:

> We think these cases are substantive interpretations of the constitutional provisions involved; we do not think they hold that a municipality never has standing to sue the state of which it is a creature. In fact, correctly interpreted, these cases do not deal with "standing," in the sense in which we use the term, at all.

*Rogers*, 588 F.2d at 1068–69.  Thus, when the LRSD alleges conflict between state and federal law, it acts not in defiance of the state, but in obedience to the Constitution.

This reasoning has been widely adopted. *See Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 628–30 (10th Cir. 1998) (allowing political subdivision to sue the state under the Supremacy Clause); *County of Ocean v. Grewal*, 475 F. Supp. 3d 355, 369–70 (D.N.J. 2020), *aff'd sub nom.*, *Ocean County Bd. of Comm'rs v. AG of N.J.*, 8 F.4th 176 (3rd Circuit 2021) (rejecting "creature of the state" theory and recognizing standing for counties to assert federal preemption claims); *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 73 (2d Cir. 2019) (same). These cases establish that political subdivisions like LRSD may sue their state when asserting that state action conflicts with the United States Constitution, as LRSD does in this case. *See also,* Brian P. Keenan, *Note, Subdivisions, Standing and the Supremacy Clause: Can a Political Subdivision Sue Its Parent State Under Federal Law?,* 103 Mich. Law Rev. 1899 (June 2005) (reviewing cases and explaining why political subdivisions should be allowed to sue their parent states).

***LRSD sues to protect federal supremacy and institutional integrity, not individual rights.***

LRSD's claim is structural, not personal.  The District seeks to ensure that state actions conform to federal constitutional mandates—not to assert individual due process or equal protection rights. When a political subdivision raises a Supremacy Clause claim, it does so to vindicate federal supremacy, not to protect its own sovereignty. *See, Branson Sch. Dist.*, 161 F.3d at 628–29 ("Such suits advance federal, not local, interests."). That distinction is dispositive here. LRSD challenges the state's compliance with the U.S. Constitution, not the existence or distribution of state power over a political subdivision of the state.

In *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (2015), the Eighth Circuit relied on *Ex. Parte Young* and *Stewart* to find that "a suit to enjoin a state official's enforcement

5

of state legislation on the ground that the official's action would violate the Constitution is not a suit against the State, and thus is not barred by the Eleventh Amendment, so long as the official has "some connection with the enforcement of the act." *Id.* at 956-57, *quoting Ex. parte Young*, 209 U.S. at 155-60. "Enforcement of unconstitutional legislation 'is simply an illegal act upon the part of [the] state official," and the State may not immunize officials from suit for such violations of the Constitution. *Id.* at 957, *citing Ex. parte Young* at 159-60.

### *Defendants' reliance on Ysursa v. Pocatello Education Association is misplaced.*

Defendants cite *Ysursa v. Pocatello Education Association*, 555 U.S. 353 (2009), to argue that LRSD—like all political subdivisions—"has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." Defs.' Resp. 3 (*quoting Ysursa*, 555 U.S. at 363). That argument misreads *Ysursa* and ignores the context of the decision.

*Ysursa* did not address standing. The plaintiffs—unions and local governments—were allowed to litigate their claims through final judgment. The case resolved the merits of a First Amendment challenge, not whether municipalities could sue. The decision simply reaffirmed that a state is not constitutionally required to subsidize speech through its subdivisions.

### *Defendants' Reliance on Delta Special School District v. State Board of Education Is Likewise Misplaced.*

Defendants' reliance on *Delta Special School District No. 5 v. State Board of Education*, 745 F.2d 532 (8th Cir. 1984), fares no better. *Delta* involved a school district's Fourteenth Amendment challenge to a state student-transfer statute. The Eighth Circuit affirmed denial of a preliminary injunction, holding that "a political subdivision of a state cannot invoke the protection of the Fourteenth Amendment against the state." *Id.* at 533 (citing *City of Trenton*, 262 U.S. 182).

That holding is limited to the Fourteenth Amendment and has no application to LRSD's Supremacy Clause argument. *Delta* did not involve any assertion that state law conflicted with

6

federal law, nor did it consider the structural principle that federal law is supreme over conflicting state law. Its reasoning was confined to substantive equal-protection and due-process rights that municipalities lack as "persons" under those specific amendments.

Furthermore, *Delta* does not address the modern understanding of Article III standing. The Supreme Court has repeatedly entertained suits against a state by a subdivision of the state, including cases under the Supremacy Clause. *See, Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 252-53 (2011) (considering suit by independent state agency against its state for violation of federal law alleged to conflict with state law); *Nixon v. Mo. Mun. League*, 541 U.S. 125, 130-31 (2004) (considering Supremacy Clause challenge by municipalities and utilities against state statute); *Lawrence Cty. v. Lead-Deadwood Sch. Dist.*, 469 U.S. 256, 258 (1985) (considering Supremacy Clause challenge by county against state statute); *Bd. of Educ. v. Allen*, 392 U.S. 236 (1968); *see also Romer v. Evans*, 517 U.S. 620, 623-24 (1996) (state constitutional amendment preventing local anti-discrimination ordinances violated the Equal Protection Clause); *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 487 (1982) (state statute prohibiting a local busing desegregation plan violated the Fourteenth Amendment). Considering this authority, *Delta*'s limited Fourteenth Amendment reasoning cannot be extended to bar Supremacy Clause claims that, by definition, advance federal—not local—interests. *See Rogers*, 588 F.2d at 1069 ("Our point is that *Hunter v. Trenton*, and allied cases are substantitive cases holding that the Constitution does not interfere in states' political organization. They are not decisions about a municipality's standing to sue its state.").

***Sovereign immunity does not bar LRSD's claims.***

Defendants' sovereign-immunity argument mischaracterizes both the nature of LRSD's claims and the reach of the Eleventh Amendment. LRSD does not seek damages from the State; it

seeks prospective relief to prevent ongoing violations of the Establishment Clause. Such relief falls squarely within the *Ex. parte Young* exception and is fully consistent with controlling precedent.

Under *Ex. parte Young*, 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective declaratory or injunctive relief to prevent continuing violations of the Constitution or federal statutes. The Supreme Court has reaffirmed this principle. *See, e.g.*, *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002). LRSD's claims fit easily within this doctrine. It seeks declaratory and injunctive relief to prevent Defendants—state officials—from enforcing state statutes that conflict with federal law. *Id*. The Eleventh Amendment therefore poses no bar to its claims.

***Ex. parte Young* cases do not "turn on the identity of the plaintiff".**

In *Iowa Migrant Movement for Justice v. Bird*, 157 F.4d 904 (2025), the Eighth Circuit noted that "the Supremacy Clause does not have an implied cause of action" but, ""in a proper case, relief may be given in a court of equity … to prevent an injurious act by a public officer."" *Id.* at 918, *quoting Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 325 (2015). The *Bird* case concerned a challenge to a law which forbade a "person who is an alien" from entering or remaining in Iowa under certain circumstances. The Iowa Migrant Movement for Justice (Iowa MMJ) challenged the law. The Iowa Attorney General argued "that Iowa MMJ lacks an equitable cause of action because it, as an organization, is not subject to prosecution under the act. *Id.* The Eighth Circuit acknowledged that "whether a cause of action exists is a different question from whether a plaintiff has standing. *Id. citing Davis v. Passman*, 442 U.S. 228, 238 N.18 (1979) ("Whether a petitioner has asserted a cause of action … depends not on the quality or extent of her injury, but on whether the class of litigants of which petitioner is a member may use the courts to enforce the right at issue."). "But", the Eighth Circuit said, "the Supreme Court stated that 'there

8

is no warrant in our cases for making the validity of an *Ex. parte Young* action turn on the identity of the Plaintiff." *Id., quoting Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 256 (2011):

> An *Ex. parte Young* action requires "a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."

*Id., citing Stewart* 563 U.S. at 255. The Eighth Circuit held that Iowa MMJ's complaint met that test so "Iowa MMJ likely has a cause of action". *Bird*, 157 F.4d at 918.

### *Conclusion*

The Defendants' opposition rests on a view of municipal standing and state immunity based on precedent from a time when "standing" had a different meaning from the jurisdictional meaning it has today. Most federal courts have long since rejected that view. LRSD faces direct, concrete injury from the challenged actions, asserts federal claims fully cognizable under *Ex. parte Young*, and meets every requirement for intervention under Rule 24. Accordingly, the Court should grant the Little Rock School District's Motion to Intervene.

>Respectfully submitted,
>
>Christopher Heller (Ark. Bar No. 81083)
>Khayyam M. Eddings (Ark. Bar No. 2002008)
>Liz K. Harris (Ark. Bar No. 2018111)
>Friday, Eldredge & Clark, LLP
>400 West Capitol, Suite 2000
>Little Rock, Arkansas 72201-3493
>Telephone:   (501) 370-1506
>Telephone:   (501) 370-1417
>Telephone:   (501) 370-1802
>Email:       heller@fridayfirm.com
>Email:       keddings@fridayfirm.com
>Email:       lharris@fridayfirm.com
>
>By:   _/s/Christopher Heller_____
>            Christopher Heller
>
>*Attorneys for Plaintiff Intervenor Little Rock School District*

10