**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

<table>
<tr><td>

GWEN FAULKENBERRY; SPECIAL RENEE SANDERS; ANIKA WHITFIELD; AND KIMBERLY CRUTCHFIELD,

*Plaintiffs,*

V.

ARKANSAS DEPARTMENT OF EDUCATION; JACOB OLIVA, in his official capacity as Secretary of the Arkansas Department of Education; SARAH MOORE, PH.D., chairwoman of the Arkansas State Board of Education; LISA HUNTER; JEFF WOOD; RANDY HENDERSON; LEIGH S. KEENER; ADRIENNE WOODS; KEN BRAGG; KATHY MCFETRIDGE-ROLLINS; AND GARY ARNOLD, PH.D., members of the Arkansas State Board of Education; SARAH HUCKABEE SANDERS, Governor of the State of Arkansas; THE ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION; and JIM HUDSON, in his official capacity as Secretary of the Arkansas Department of Finance and Administration,

*Defendants.*
</td><td>

Civil Action No. 4:25-cv-00592-DPM
</td></tr>
</table>

**DEFENDANTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO
SCHOOL DISTRICT'S MOTION TO INTERVENE**

Although this Court gave Little Rock School District another chance to show that it has standing or a cause of action to intervene, it has failed to do so. Indeed, precedent shows that the District lacks standing or a cause of action that would allow it to assert an Establishment Clause claim against the State. And while the proposed amended complaint now at least mentions the Supremacy Clause, that Clause does not provide the District with a cause of action. This Court should therefore deny the District's intervention motion.

## I.   LITTLE ROCK SCHOOL DISTRICT LACKS STANDING.

As explained, ECF 22 at 1-3, ECF 32 at 1-6, the District is a political subdivision, and as such, it has "no standing to invoke" constitutional provisions "in opposition to the will of [its] creator." *Coleman v. Miller*, 307 U.S. 433, 441 (1939); *see, e.g.*, *Delta Special Sch. Dist. No. 5 v. State Bd. of Educ. for State of Ark.*, 745 F.2d 532, 533 (8th Cir. 1984) ("A political subdivision of a state cannot invoke the protection of the fourteenth amendment against the state."). Because the District seemingly asserts only an Establishment Clause claim (which applies to the State under the Fourteenth Amendment, *see Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 15 (1947)), and it's undisputed that the District is a political subdivision, the District lacks standing. The District's proposed amended complaint and supplemental brief do not show otherwise.

As a preliminary matter, the District argues it has a concrete injury because the LEARNS Act "alters [its] authority, finances, and statutory obligations to operate public schools." ECF 40 at 1. This conclusory argument is insufficient. In its

1

proposed amended complaint, the District alleges that the LEARNS Act may change the ratio of local and state contributions that school districts receive; however, it acknowledges that school districts receive funding per pupil. ECF 39-1 at ¶¶ 55-59. The proposed complaint does not allege that the District is harmed by any potential change in the ratio of local and state contributions, nor does it explain why they are harmed by potential reduced enrollment when they would still receive the same amount of funding per student and would require fewer resources to provide services to fewer students. Nor does it explain how it is harmed by the LEARNS Act when the Act provides additional resources, including by ensuring access to literacy coaches for poorly performing schools and increasing the base salary for teachers. *See, e.g.*, LEARNS Act §§ 29, 35.

In any event, the District cannot overcome binding precedent that, as a political subdivision, it lacks standing to sue the State for an alleged violation of the federal Constitution. The District argues the political-subdivision cases are no longer good law and "[t]hings changed in 1960" with *Gomillion v. Lightfoot*, 634 U.S. 339 (1960). ECF 40 at 2 (emphasis omitted). But as explained, that case is distinguishable, including because it involved a "suit by individual citizens," ECF 32 at 6 (quoting *City of Hugo v. Nichols*, 656 F.3d 1251, 1259 (10th Cir. 2011)). And while the District urges this Court to take note of the "sweeping language" of *Gomillion*, ECF 40 at 2 (citation omitted), that's inconsistent with the District's position that the Court ignore *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353 (2009). If *Gomillion*'s statements cannot be dismissed as dicta, then neither can *Ysura*'s, and *Ysura* confirms that "a

political subdivision, 'created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.'" *Ysura*, 555 U.S. at 363 (quoting *Williams v. Mayor of Baltimore,* 289 U.S. 36, 40 (1933)).  The Eighth Circuit has also confirmed, decades after *Gomillion*, that political-subdivision cases remain binding.  *See Delta Special Sch. Dist.*, 745 F.2d at 533 (citing *City of Trenton v. New Jersey,* 262 U.S. 182 (1923)).

The District also relies on out-of-circuit cases; however, none support its arguments.  *City of San Juan Capistrano v. California Public Utilities Commission* certainly doesn't help the District because it "held that political subdivisions lack standing to challenge state law on constitutional grounds in federal court."  937 F.3d 1278, 1280 (9th Cir. 2019); *see* ECF 32 at 2 & n.2 (noting the District relies on one side of a circuit split and collecting cases); *Greater Heights Acad. v. Zelman*, 522 F.3d 678, 681 (6th Cir. 2008) ("community schools, as political subdivisions, are barred from invoking the protections of the Fourteenth Amendment").  The other cited cases are also of no help to the District.  They are all distinguishable because they involved situations where political subdivisions were asserting preemption based on federal statutes.  *See Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of State of N.J.*, 8 F.4th 176, 178, 181 (3d Cir. 2021) ("counties, a sheriff, and the oversight board of a county jail" could assert a preemption claim that alleged state immigration directives were preempted by federal statutes); *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 73-74 (2d Cir. 2019) (a political subdivision could assert a preemption claim that alleged a state law regarding runways was preempted by the Federal Aviation Act); *Branson Sch. Dist.*

3

*RE-82 v. Romer*, 161 F.3d 619, 628 (10th Cir. 1998) ("a political subdivision has standing to bring a constitutional claim against its creating state when the substance of its claim relies on the Supremacy Clause and a putatively controlling federal law"); *Rogers v. Brockette*, 588 F.2d 1057, 1071 (5th Cir. 1979) (a school district could assert a preemption claim that a state statute was "inconsistent with the federal school breakfast statutes"). These cases thus stand for the proposition that political subdivisions only have standing or a cause of action against their creator if state law requires action prohibited by federal law or prohibits action that is allowed by federal law that preempts the field. They do not stand for the proposition that political subdivisions have freewheeling standing to assert constitutional rights against the State. Indeed, there does not seem to be "a single case in which the Supreme Court or a court of appeals has allowed a political subdivision to sue its parent state under a substantive provision of the Constitution." *City of Hugo*, 656 F.3d at 1256. Yet that is exactly what the District seeks to do here.

Here, the District asserts a claim under the Establishment Clause (a substantive provision of the Constitution), it does not assert that the LEARNS Act is preempted by a federal statute. *See* ECF 39-1 at ¶¶ 70-98. To be sure, its proposed amended complaint now mentions the Supremacy Clause once, *id.* ¶ 1, unlike its original one that never mentioned the Supremacy Clause, but the proposed complaint does not assert preemption, nor does it allege the District is required to take any actions to enforce the law that it alleges is unconstitutional. Instead, it simply asserts "an action for declaratory and injunctive relief" "pursuant to" federal-question

4

jurisdiction, the "Supremacy Clause," and *Ex parte Young*, challenging the LEARNS Act "on the grounds that sections of [it] violate the Establishment Clause." *Id.* But the Supremacy Clause doesn't create a cause of action, *see infra* Part II, the District doesn't assert preemption, and none of its out-of-circuit cases show that it has standing or a cognizable right that allows it to assert an Establishment Clause claim.

Finally, regardless of the out-of-circuit cases, the District cannot overcome *Delta Special School District* by claiming its holding is limited to the Fourteenth Amendment, pointing to its alleged Supremacy Clause argument, or by insinuating it has been overruled *sub silentio*. Not only does the District not assert a preemption argument or otherwise rely on the Supremacy Clause, but it also ignores that its Establishment Clause claim relies on incorporation under the Fourteenth Amendment. That means it is "invok[ing] the protection of the fourteenth amendment against the state," which it cannot do. 745 F.2d at 533. In any event, the District ignores that the Eighth Circuit cited *City of Trenton*, which was not limited to the Fourteenth Amendment. *See* 262 U.S. at 184, 192 (holding that a political subdivision could not assert a claim under the Contract Clause against the State or assert that the State "takes [its] property … for public use without just compensation and without due process of law, in violation of the Fourteenth Amendment"). And the District ignores that the Supreme Court cases it cites (with one exception) do not address standing or the political-subdivision doctrine, so they do not "stand for the proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011); *see* ECF 32 at 5 n.4 (addressing every cited case). The one case that addresses

5

standing cannot overrule *Delta Special School District* because it pre-dates that opinion and, in any event, concluded only that school board members had a personal stake in the litigation when they argued a state statute would compel them to violate their oaths to the federal Constitution or be expelled from office. *Bd. of Educ. of Cent. Sch. Dist. No. 1 v. Allen*, 392 U.S. 236, 241 n.5 (1968). That's nothing like this case where the District does not allege that the LEARNS Act will require the District to violate the federal Constitution or any law.

Because the District is a political subdivision and identifies no basis to depart from precedent that does not permit political subdivisions to assert constitutional claims against their parent states, it lacks standing to pursue its claims here.

## II.   LITTLE ROCK SCHOOL DISTRICT LACKS A CAUSE OF ACTION AND CANNOT OVERCOME SOVEREIGN IMMUNITY.

Despite the State's repeated arguments that the District lacks a cause of action, *e.g.*, ECF 32 at 1, and acknowledgement that "whether a cause of action exists is a different question from whether a plaintiff has standing," ECF 40 at 8 (quoting *Iowa Migrant Movement for Justice v. Bird*, 157 F.4th 904, 928 (8th Cir. 2025)), the District has still failed to allege a valid cause of action in its proposed amended complaint or show that it has a cause of action that can overcome sovereign immunity.

As explained, and the District has not disputed, the District lacks a cause of action under 42 U.S.C. § 1983. *See, e.g.*, ECF 32 at 1; *City of E. St. Louis v. Cir. Ct. for Twentieth Jud. Cir., St. Clair Cnty.*, 986 F.2d 1142, 1144 (7th Cir. 1993). It also lacks one under the Supremacy Clause, which "certainly does not create a cause of action," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015). The same

6

is true of *Ex parte Young*, which does not "does not create such a cause of action" but only "provides a path around sovereign immunity *if* the plaintiff already has a cause of action from somewhere else," *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 905 (6th Cir. 2014). The District may argue that it has an equitable cause of action, but it failed to allege one in its revised proposed complaint (even though the State previously noted this failure, ECF 4 at n.3).

Regardless, the District cannot show that it has an equitable cause of action, including because it cannot show that it has a right for which it can seek equitable relief. *See Trump v. CASA, Inc.,* 606 U.S. 831, 841 (2025) ("The equity jurisdiction conferred on the Federal courts is the same that the High Court of Chancery in England possesses." (quoting *Payne v. Hook*, 74 U.S. 425, 430 (1869))); *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 322 (1999) (explaining the "merger of law and equity" "did not alter substantive rights"). The District points to no historical tradition that would allow a political subdivision to invoke constitutional rights against its creator; indeed, its own cases demonstrate the opposite. *See, e.g.*, *Rogers*, 588 F.2d at 1070 (opining that older cases discussing "standing or a 'right to sue'" meant "that the statutory or constitutional provision in question protected [plaintiff's] interests," and that the *City of Trenton* line of cases "meant only that, on the merits, the municipality had no rights under the particular constitutional provisions it invoked").

*Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247 (2011), is not to the contrary. There, the Supreme Court simply assessed whether the *Ex parte*

*Young* exception to sovereign immunity applied—whether to apply the "fiction" that an officer is "not the State for sovereign-immunity purposes." *Id.* at 255. It concluded that allowing an "independent state agency claiming to possess federal rights" to invoke the *Ex parte Young* exception to sovereign immunity "does not offend the distinctive interests protected by sovereign immunity" and the validity of the exception does not "turn on the identity of the plaintiff." *Id.* *Virginia Office* is thus about whether a plaintiff could overcome immunity, not whether it had a cause of action.

What's more, *Virginia Office* demonstrates that the District cannot overcome Defendants' immunity here. *Virginia Office* set two requirements for plaintiffs who are state entities "to invoke the *Ex parte Young* exception to sovereign immunity": (1) "a federal right that it possesses against its parent State," and (2) "authority to sue other state officials to enforce that right." *Id.* at 260-61; *see id.* 261 n.8 ("Such litigation cannot occur unless the state agency has been given a federal right of its own to vindicate (as [Virginia Office] alleges it has been given under the highly unusual statute at issue here)."). The District fails at the first step. As explained, it lacks a federal right to assert a federal constitutional provision against its creator under the Establishment Clause (and the Fourteenth Amendment by which it is incorporated). *See supra* Part I. Nor does the District's suggestion that the Establishment Clause is a structural, federalist provision allow it to claim the Establishment Clause provides it with rights as a political subdivision. Not only is that interpretation of the Establishment Clause foreclosed by current binding precedent (which Defendants reserve the right to challenge), but also if the District is correct that the

8

Establishment Clause is a federalism provision, then it is not properly incorporated against the States and the District would still have no rights to assert under it against Defendants here. *See, e.g., Town of Greece v. Galloway*, 572 U.S. 565, 604 (2014) (Thomas, J., concurring) (reiterating the "view that the Establishment Clause is 'best understood as a federalism provision'" and is not properly incorporated against the States (citation omitted)).

*Iowa Migrant Movement* also does not help the District. To be sure, that opinion does, at times, seem to assume that *Virginia Office* is about a cause of action. But *Iowa Migrant Movement* is not about political subdivisions and held only that "[a] plaintiff with representation standing may bring an *Ex parte Young* action." 157 F.4th at 918. Unlike Iowa Migrant Movement, the District is a political subdivision and is not a membership organization that seeks to assert "'representational' standing on behalf of members." *Id.* at 916. Accordingly, that case does not help the District establish a cause of action or overcome sovereign immunity.

In short, the District has failed to state a valid cause of action or show that it can overcome sovereign immunity for its Establishment Clause claim. This Court should therefore not allow it to intervene, especially when it merely duplicates Plaintiffs' arguments in this federal suit and in the state-court litigation. And to the extent it is asserting additional claims, that is even more reason to not allow intervention. While the District only asserts one count under the federal Establishment Clause, ECF 39-1 at 25, the proposed amended complaint includes allegations that the LEARNS Act is discriminatory, *id.* at 21-23, and that it violates the Arkansas

9

Constitution, *id.* at 23-24. To the extent the District asserts equal protection claims and state constitutional claims, it lacks standing and a cause of action and cannot overcome immunity for the reasons articulated above and in earlier briefs. *See generally* ECF 22, 32. Moreover, these allegations, along with complaint paragraphs that appear identical to Plaintiffs' state-court complaint, show that the District's participation will unnecessarily complicate this case, including by inserting peripheral issues into the litigation. *Compare, e.g.*, ECF 39-1 at ¶¶ 25, 55-69, *with* Complaint, *Faulkenberry v. Ark. Dep't of Educ.*, Case No. 60CV-24-4630 (June 7, 2024) ¶¶ 29, 46-60.[1]

## CONCLUSION

Because the District cannot satisfy the threshold requirements of standing or a cause of action, nor establish an exception to sovereign immunity, this Court should deny the motion to intervene.

---

[1] Available at https://caseinfo.arcourts.gov/opad/search?context=cases&search-Term=60CV-24-4630.

Respectfully submitted,

TIM GRIFFIN
Attorney General

By:    Laura Purvis
       Ark. Bar No. 2023239
       Assistant Attorney General

       Erica Crouse
       Ark. Bar No. 2026016
       Assistant Solicitor General

       Arkansas Attorney General's Office
       101 West Capitol Avenue
       Little Rock, AR 72201
       (501) 682-1019
       (501) 682-2591 fax
       laura.purvis@arkansasag.gov

       *Counsel for Defendants*

11