**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**GWEN FAULKENBERRY,**
**SPECIAL RENE SANDERS,**
**ANIKA WHITFIELD, AND**
**KIMBERLY CRUTCHFIELD**                                   **PLAINTIFFS**

**v.**                         **Case No. 4:25-CV-592-DPM**

**ARKANSAS DEPARTMENT OF EDUCATION, ET AL.**          **DEFENDANTS**

**LITTLE ROCK SCHOOL DISTRICT'S REPLY IN SUPPORT OF MOTION TO INTERVENE**

*Introduction*

"Rule 24 is construed liberally, and we resolve all doubts in favor of the proposed interveners." *AstraZeneca Pharma. LP v. McClain*, 2024 U.S. District LEXIS 253237 (E.D. Ark. 2024, 4, *citing U.S. v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995). LRSD's arguments in it's opening brief, and extended below, provide case law support for the following propositions:

(1) the majority of Courts of Appeals which have considered the question allow political subdivisions to sue the states that created them under the Supremacy Clause;

(2) political subdivisions may not sue to enforce individual constitutional rights, but only "collective or structural" constitutional rights;

(3) unlike the Due Process or Free Exercise Clauses, for example, the Establishment Clause is a source of structural constitutional rights, prohibiting certain government actions and establishing a wall of separation between church and state; and

(4) the Supremacy Clause exists to prevent states from enacting laws such as the LEARNS Act which conflict with federal laws or violate federal constitutional provisions.

1

Resolving all doubts in favor of LRSD's intervention, there are sufficient legal and factual bases for the court to allow LRSD to proceed with its claims that the LEARNS Act violates the Establishment Clause and therefore also violates the Supremacy Clause.

***Argument***

Relying upon century-old precedent, the State Defendants argue for a *per se* rule that political subdivisions never have standing to sue the states which created them:

> In any event, the District cannot overcome binding precedent that, as a political subdivision, it lacks standing to sue the State for an alleged violation of the federal Constitution.

State's Supplemental Response, p. 2. The United States Supreme Court has rejected the idea that the cases at the root of the State's argument create such a *per se* rule:

> Thus, a correct reading of the seemingly unconfined dicta of *Hunter* and kindred cases is not that the State has plenary power to manipulate in every conceivable way, for every conceivable purpose, the affairs of its municipal corporations, but rather that the state's authority is unrestrained by the particular prohibitions of the Constitution considered in those cases.

*Gomillion v. Lightfoot*, 364 U.S. at 339, 344 (1960). The Court's specific reference is to *Hunter v. Pittsburgh*, 207 U.S. 161 (1907). The Court's reference to "kindred cases" includes *Trenton vs. New Jersey*, 262 U.S. 182 (1923), which the Court describes as a "related" case. *Id.* at 343. The "particular prohibitions of the Constitution considered" in *Hunter* and *Trenton* were the Contracts Clause and the Fourteenth Amendment.

In light of *Gomillion*, four "courts of appeals have permitted subdivisions to sue their creating states under the Supremacy Clause." *Ocean Cty. Bd. of Comm'rs v. AG of N.J.*, 8 F.4th 176, 180 (3rd Cir. 2021) (*citing Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 73 (2nd Cir. 2019); *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 628-29 (10th Cir. 1998); and *Rogers v. Brockette*, 588 F.2d 1057, 1070-71 (5th Cir. 1979).

With the demise of the *per se* rule, the question has become which provisions of the United States Constitution may be enforced against states by political subdivisions. The Tenth Circuit Court of Appeals has held that whether a municipality may sue its creating state depends upon whether the constitutional provision upon which the municipality relies was written to protect individual rights as opposed to collective or structural rights;

> Despite the sweeping breadth of Justice Cardozo's language, both *Williams* [v. *Baltimore*, 289 U.S. 36 (1933)] and *Trenton* [v. *New Jersey*, 262 U.S. 182 (1923)] stand only for the limited proposition that a municipality may not bring a constitutional challenge against its creating state when the constitutional provision that supplies the basis for the complaint was written to protect individual rights, as opposed to collective or structural rights.

*Branson Sch. Dist. RE- 82 v. Romer*, 161 F.3d 619, 628 (10th Cir. 1998). "Neither the *Williams*/*Trenton* line of cases nor any other subsequent Supreme Court case has held that a political subdivision is barred from asserting the structural protections of the Supremacy Clause of Article VI in a suit against its creating state." *Id.* at 629. This echoes the Fifth Circuit Court of Appeals' conclusion in *Rogers v. Brockette*, 588 F.2d 1057, 1068 (5th Cir. 1979):

> We think these cases [the *Williams/Trenton* line of cases] are substantive interpretations of the constitutional provisions involved; we do not think they hold that a municipality never has standing to sue the state of which it is a creature.

This is where *Delta Special Sch. Dist. v. State Bd. of Education*, 745 F2d. 532 (8th Cir. 1984) fits in. That case holds only that "[a] political subdivision of a state cannot invoke the protection of the fourteenth amendment against the state." *Id.* at 533, *citing City of Trenton v. New Jersey*, 262 U.S. 182 (1923). *Delta* challenged a student transfer law which gave students the right to appeal to the County Board of Education the denial of a transfer but did not give Delta the right to appeal the granting of one. *Id.* at 532. Delta claimed that because of this difference it was "denied equal protection of the laws". Delta argued to the Eighth Circuit that "the failure to provide the school district a right of appeal violates its due process and equal protection rights under the fourteenth

amendment of the United States Constitution." *Id.* at 533. This decision comports with cases such as *Romer, Ocean County* and *Brockette* which hold that cases such as *Trenton* preclude political subdivisions from asserting individual constitutional rights, but not collective or structural constitutional rights. The *Delta* case does nothing to diminish LRSD's argument in this case.

The State argues based on *Delta,* that LRSD's Establishment Clause argument is really a Fourteenth Amendment argument because the Establishment Clause was made applicable to the states through the Fourteenth Amendment. State's Supplemental Response, pp. 1,5 *citing Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 15 (1947). The contrast between this case and *Delta* shows why that argument is wrong.

The school district in *Delta* based its arguments on the individual protections of the Due Process and Equal Protection clauses of the Fourteenth Amendment. LRSD raises Establishment Clause issues that are collective and structural, not individual. The fact that the Establishment Clause was made applicable to the states in *Everson* does not change its function as a structural limitation on the government power to establish religion, and does not change the nature of LRSD's case.

The Establishment Clause protects collective or structural rights rather than individual rights. Like the remedy sought by the Plaintiffs in this case, relief in Establishment Clause cases is often aimed at negating government power (such as preventing state-sponsored prayer), rather than providing specific compensation for a victim.

The best metaphor for the structural nature of the Establishment Clause is found in *Everson v. Board of Education*, 330 U.S. 1, 15 (1947):

> The "establishment of religion" clause of the First Amendment means at least this: neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or remain away from church

against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and *vice versa*. *In the words of Jefferson, the clause against establishment of religion by law was intended to erect "a wall of separation between church and State."* *Id.* at 15-16. (emphasis added).

Many other cases support the proposition that the Establishment Clause acts as a structural restraint on government power rather than a source of individual rights. *E.g. Engel v. Vitale*, 370 U.S. 421, 430 (1962) ("The Establishment Clause, unlike the Free Exercise Clause, does not depend upon any showing of direct governmental compulsion and is violated by the enactment of laws which establish an official religion whether those laws operate directly to coerce nonbelieving individuals or not."); *see also* Carl H. Esbeck, *The Establishment Clause as a Structural Restraint on Governmental Power,* 84 Iowa L. Rev. 1, 4 (1998) (arguing that the Establishment Clause should be viewed "as a structural restraint on the government's power to act on certain matters pertaining to religion.").

The State argues that cases like *Romer* and *Brockette* "stand for the proposition that political subdivisions only have standing or a cause of action against their creator if a state law requires action prohibited by federal law or prohibits action that is allowed by federal law that preempts the field." State's Supplemental Response, p. 4.  In this case, the Plaintiffs and LRSD argue that state law, the LEARNS Act, requires action prohibited by federal law, the Equal Protection Clause.  The State cites the Tenth Circuit's 2-1 panel decision in *City of Hugo v. Nichols*, 656 F.3d 1251, 1256 (10th Cir. 2011) for the proposition that no appellate case exists which "has allowed a political subdivision to sue its parent state under a substantive provision of the Constitution." But there is no principled reason why a federal law could create a basis for political

subdivision standing but a federal constitutional provision could not. The dissent in *Hugo* reviews the history of political subdivision standing cases back to *Trenton* and *Williams*, and makes a strong argument "that political subdivision standing is forbidden only when 'the constitutional provision that supplies the basis for the complaint was written to protect individual rights, as opposed to collective or structural rights.'" *Id.* at 1272, *citing Romer*, 161 F3d. at 628.

*Conclusion*

For the reasons set out above and in its opening brief, LRSD respectfully requests that the Court grant its motion to intervene as a Plaintiff in this case.

Respectfully submitted,

Christopher Heller (Ark. Bar No. 81083)
Khayyam M. Eddings (Ark. Bar No. 2002008)
Liz K. Harris (Ark. Bar No. 2018111)
Friday, Eldredge & Clark, LLP
400 West Capitol, Suite 2000
Little Rock, Arkansas 72201-3493
Telephone:   (501) 370-1506
Telephone:   (501) 370-1417
Telephone:   (501) 370-1802
Email:       heller@fridayfirm.com
Email:       keddings@fridayfirm.com
Email:       lharris@fridayfirm.com

By:    /s/Christopher Heller
           Christopher Heller

*Attorneys for Plaintiff Intervenor Little Rock School District*